**FILED**

FEB -6 2015

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:  JOHN T. CARTER,

                Debtor.
_____/

THEY MIGHT BE, INC.

                Plaintiff,

v.

JOHN T. CARTER,

                Defendant.

_____/

CASE NO: 6:14-bk-07895
Chapter 7

Adv. Pro. No.:_____

## PETITION TO EXEMPT DEBT FROM DISCHARGE / ADVERSARIAL COMPLAINT

Plaintiff /Creditor, THEY MIGHT BE, INC. (hereafter "TMBI"), a foreign corporation, sues Defendant/Debtor, JOHN T. CARTER (hereafter "Carter"), and petitions to exempt from discharge and states as follows:

### JURISDICTION

1.      This Court has jurisdiction to exempt from discharge the subject debt pursuant to 11 U.S.C. §523(a)(2)(A) and §523(a)(6).

### COMMON FACTS

1.      Carter is an individual over the age 18 and is *sui juris*.

2.      Carter at all times material has been a resident of Orange County, Florida.

3.      Carter is the debtor in the Chapter 7 bankruptcy petition, Case No.: 6:14-bk-07895.

73893
350.00

4.      TMBI is a foreign corporation.

5.      TMBI is a creditor in the subject bankruptcy proceeding.

6.       Carter filed his petition for Chapter 7 bankruptcy on July 10, 2014.

7.      TMBI did not file a Proof of Claim because it was noticed not to do so unless noticed to by the Court; TMBI was no so noticed by the Clerk of the Court.

8.      The creditor's meeting was noticed on July 11, 2014.

9.      The bankruptcy court held a creditors meeting on August 20, 2014.

10.     The deadline for filing opposition to discharge of a debt or to file an adversarial complaint was October 20, 2014.

11.     TMBI filed its Petition to Exempt Debt From Discharge  / Adversarial Complaint ("The Petition") on October 17, 2014.

12.     The Petition was filed timely pursuant to Fed R. Bnkr. P. 4007(c). but was filed in the wrong court.

13.      Carter and his legal counsel received notice of TMBI's claims for exemptions of the listed debt and for its claims for fraud and false pretenses upon filing of the Petition in the wrong court as the Petition was served on Carter's legal counsel by e-service.

14.     At all times material to this complaint Carter has been aware and on notice of TMBI's claims of fraud and exemption from discharge as to the subject debt.

15.     This petition is timely filed pursuant to Fed R. Bnkr. P. 4007(c).

16.     NERDAPALOOZA, LLC is a Florida limited liability company (hereafter "Nerdapalooza").

17.     BRYAN KISSEL (hereafter "Kissel") is an individual over the age 18 and is *sui juris*.

18.    Kissell at all times material has been a resident of Orange County, Florida.

19.    JOSHUA THEW (hereafter "Thew") is an individual over the age 18 and is *sui juris*.

20.    Thew at all times material has been a resident of Orange County, Florida.

21.    Nerdapalooza is a Florida Limited Liability Company.

22.    Nerdapalooza was dissolved by Carter, Kissle and Thew on October 29, 2013.

23.    On information and belief, Carter, Kissel and Thew were the sole members and managing members of Nerdapalooza.

24.    TMBI sued Nerdapalooza, Carter, Kissel and Thew in Case No.: 2014-CA-002078 in the Circuit Court in and for Orange County, Florida.

25.    TMBI sued Carter, Kissel and Thew for personal liability pursuant to Chapter 608 of the Florida Statutes, including but not limited to F.S. §§ 608.4421, 608.444 and 608.708, for conspiracy, and personal liability based on their acts of utilizing the limited liability status of Nerdapalooza to mislead and perpetrate a fraud upon TMBI, thereby making them personally liable for issuance of a worthless or dishonored check, pursuant to § 68.065 of the Florida Statutes.

26.    TMBI obtained a Partial Default Final Judgment against Nerdapalooza for ONE HUNDRED FIFTY-SIX THOUSAND FOUR HUNDRED TWENTY THREE DOLLARS ($156,423). A copy of that Partial Default Final Judgment is attached hereto as Exhibit "A" and incorporated by reference herein as part of this Adversarial Complaint (hereafter also referred to as "the Final Judgment").

27.    On April 23, 2013, TMBI, which was also known as "They Might Be Giants", an alternative music band, entered into a contract with Nerdapalooza, for TMBI to personally

appear and perform music at the Orange County Convention Center, 9990 International Dr., Orlando, Florida, as the headline act for a music festival on October 19, 2013, designed and operated by Nerdapalooza, and called "Nerdapalooza 2013".

28. The contract was in writing, and was signed by Nerdapalooza, Carter, and later on or about October 19, 2013, also signed by Thew. A copy of the contract between the parties is attached as Exhibit "B" to this Complaint and is incorporated as part of this Complaint by reference (hereafter "the contract").

29. The contract provided that Nerdapalooza would pay TMBI FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) in return for TMBI performing at "Nerdapalooza 2013".

30. The contract also provided that Nerdapalooza and Carter would pay to TMBI an initial payment of TWELVE THOUSAND FIVE HUNDRED DOLLARS ($12,500) by April 30, 2013.

31. The contract also provided that a second payment of TWELVE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($12,500.00) would be made to TMBI by August 19, 2013.

32. The contract provided that the final payment, which should have been TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), should have been paid to TMBI the night of the show or when TMBI appeared to perform at "Nerdapalooza 2013".

33. In June, 2013 TMBI received the initial deposit of TWELVE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($12,500.00). This deposit was made in two payments (a) a wire transfer of FIVE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($5,500.00) believed to be from Nerdapalooza and (b) a wire transfer of SEVEN THOUSAND AND NO/100 DOLLARS ($7,000.00) directly from Kissel.

34.    TMBI appeared at "Nerdapalooza 2013" and before going on stage to perform it became apparent to the tour manager for TMBI that the attendance at "Nerdapalooza 2013" seemed suspiciously sparse or small.

35.    Prior to TMBI going on stage to perform, the tour manager met and spoke with Carter, who was present at "Nerdapalooza 2013" to oversee the operations and conduct of the concert.

36.    TMBI's tour manager, Scott Bozack, expressed concerns to Carter that there were not enough people attending the event.

37.    Bozack asked Carter if they were earning enough money to pay for TMBI.

38.    Carter assured Scott Bozack that everything was okay and that there were no problems with paying TMBI.

39.    In reliance on Carter's assurances, Bozack proceeded with preparing the stage for the band to perform.

40.    Before They Might Be Giants went on stage to perform Thew approached Scott Bozack and attempted to tender a check for only TWENTY FIVE THOUSAND DOLLARS AND NO/100 ($25,000.00).

41.    Carter, Kissel and Thew knew long before this date that Nerdapalooza had not paid the second deposit required for the band's performance, and therefore the amount due at the time of the concert was actually THIRTY-SEVEN THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($37,500.00).

42.    Scott Bozack told Thew that the correct amount of the check should be THIRTY-SEVEN THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($37,500.00).

43.    Thew acknowledged that Scott Bozack was correct.

44.     Thew left and appeared to go talk to Carter and, on information and belief, also spoke with Kissel.

45.     The band, They Might Be Giants, went on stage and performed due to the representations made to Scott Bozack that everything was fine, that apparently there was enough money to pay the band, and the recognition by Thew that a check for THIRTY-SEVEN THOUSAND FIVE HUNDRED ANDNO/100 DOLLARS ($37,500.00) was the correct amount, and would be delivered to Scott Bozack.

46.     The band, They Might Be Giants, and therefore TMBI fully performed its obligations under the contract and satisfied all conditions precedent.

47.     After the band finished performing at "Nerdapalooza 2013", Thew returned to Scott Bozack and delivered him check number 1169, written on the account of Nerdapalooza, LLC, at JPMorgan Chase Bank, for the amount of THIRTY-SEVEN THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($37,500.00).   A copy of the check is attached as Exhibit "C" and is incorporated as part of this complaint by reference (hereafter "the check").

48.     Nerdapalooza, Carter and Thew delivered the check to TMBI as final payment for TMBI's performance at "Nerdapalooza 2013".

49.     At the time that Thew delivered the check to Scott Bozack, Thew stated words to the effect; "...Man, I am so sorry about this.  We are over 100K in the hole and we don't have the money.  I will sell whatever I have to pay for this.  I will make sure this happens if it takes the rest of my life. ..."

50.     On information and belief, Carter, Kissel and Thew knew that "Nerdapalooza 2013" was unable to pay TMBI before the band, They Might Be Giants, went on stage, and that Carter and Thew, with Kissel's knowledge and agreement, withheld this information from Scott

Bozack, and Carter even represented that everything was fine.

51.    That same day, October 19, 2013, Thew then signed a document where he acknowledged that (a) Nerdapalooza did not have enough funds in the bank to cover the check, and (b) that "... the parties involved will sign it with the intent to make good on the contractual payment. ...". A copy of the document signed by Thew is attached as Exhibit "D" and incorporated as part of this Complaint by reference.

52.    In addition, Thew made verbal promises and guaranteed that TMBI would be paid in full.

53.    TMBI deposited the check, but later TMBI was notified that the check was dishonored or was worthless.

54.    TMBI contacted Nerdapalooza, including Carter and Thew and requested that Nerdapalooza and the members ensure that the check would be accepted and paid.

55.    For several days beginning on October 22, 2013, Nerdapalooza, Carter and Thew, and it is believed Kissel, began to stall TMBI and represented that they would pay all amounts due to TMBI once the receipts from "Nerdapalooza 2013" were being tallied.

56.    However, on information and belief, between October 19 and October 29, 2013, Carter, Kissel and Thew were distributing the proceeds from "Nerdapalooza 2013" among themselves and knowingly and intentionally preparing to dissolve Nerdapalooza, without paying

57.    On October 29, 2013, Carter, and on information and belief, Thew and Kissel, prepared and submitted Articles of Dissolution of Nerdapalooza where they falsely represented that creditors such as TMBI were being properly paid.

58.    Nerdapalooza refused to make arrangements for the check to be successfully negotiated and they made no efforts to pay the THIRTY-SEVEN THOUSAND FIVE

HUNDRED AND NO/100 DOLLARS ($37,500.00) that was owed to TMBI.

59.    Carter, Kissel and Thew then acted in concert together to distribute all proceeds from the Nerdapalooza concert between them, and they intentionally made no further payments to TMBI.

60.    On October 29, 2013, Carter, Kissel and Thew in concert with each other, intentionally submitted a false and fraudulent statement to the Florida Secretary of State as part of Nerdapalooza's Articles of Dissolution, in which they stated under oath that arrangements had been made for paying the creditors, such as TMBI.

61.    On or about December 5, 2013, TMBI, through the undersigned counsel, sent to Nerdapalooza a letter demanding payment for the check.  A copy of the letter is attached as Exhibit "E" and is incorporated as part of this Complaint by reference.

62.    In the letter (Exhibit "E") TMBI notified Nerdapalooza that the check had been dishonored for "insufficient funds".

63.    In the letter (Exhibit "E") TMBI notified Nerdapalooza that, pursuant to §68.065 of the *Fla. Stat.,* TMBI demanded that Nerdapalooza pay the full amount of the check within 30 days.

64.    In the letter (Exhibit "E") TMBI forewarned Nerdapalooza that:

...Unless Nerdapalooza LLC pays the check within 30 days then They Might Be Inc. will be entitled to a judgment in the amount of the check ($37,500) ($1,875 the service charge of 5 percent of the check) plus three times the amount of the check ($112,500) for a total judgment of $151,875, plus interest at the statutory rate, bank fees, costs of filing suit, and attorneys fees. ...

65.    In addition, on December 5, 2013, TMBI, through the undersigned counsel, sent to Nerdapalooza, Carter, Kissel and Thew another letter demanding payment of the THIRTY-FIVE THOUSAND AND NO/100 DOLLARS ($37,500.00).  A copy of the letter is attached as

Exhibit "F", and is incorporated as part of this petition by reference.

66.    In the letter (Exhibit "F") TMBI states:

...Enclosed is a copy of the contract between Nerdapalooza LLC and They Might Be Inc.  You will note that the contract was reaffirmed or resigned by Joshua Thew.  In addition, I am enclosing a copy of the letter or note that was also signed by Joshua Thew where, by signing, he acknowledges that it states in part; "...the parties involved will sign with the intent to make good on the contractual payment" ...

...A dishonored check in the amount of $37,500 was delivered by Nerdapalooza LLC.  No further attempt to pay the amount due has been made.  In another letter I have submitted They Might Be Inc.'s demand for payment of the dishonored check. ...

67.    In the letter (Exhibit "F") TMBI notified Nerdapalooza, Carter, Kissel and Thew

that TMBI believed that all of them may be liable for payment of the THIRTY-SEVEN

THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($37,500.00) that Nerdapalooza

contractually agreed to pay.

68.    In the letter (Exhibit "F") TMBI stated that:

...We have become aware that Nerdapalooza LLC has now filed Articles of Dissolution with the Florida Secretary of State's office.  The Articles of Dissolution were electronically signed by John T. Carter, Bryan Kissel and Josh Thew.  By their signatures John T. Carter, Bryan Kissel and Josh Thew state that, pursuant to Section 817.155 of the Florida Statutes, each of them have certified that the eight statements above were truthful.  A copy of the Articles of Dissolution are also enclosed with this letter.  Each of these members has subjected himself to potential criminal liability under Section 817.155, and for your reference I am enclosing a copy of that statute. ...

69.    On or about October 29, 2013, Carter, Kissel and Thew filed Articles of

Dissolution with the Florida Secretary of State's Office, and the Articles of Dissolution were

electronically signed by Carter, Kissel and Thew.  A copy of what are believed to be the Articles

of Dissolution are attached as Exhibit "G". (hereafter referred to as "Articles of Dissolution").

70.    In the Articles of Dissolution, Carter, Kissel and Thew represented that the eight

statements in the Articles of Dissolution were truthful.  Among the eight statements was:

> ...Adequate provision has been made for the debts, obligations and liabilities pursuant to s. 608.4421. ...

71.     Carter, Kissel and Thew, violated §817.155 of the *Fla. Stat.*, when in the sixth statement they asserted that "...Adequate provision has been made for the debts, obligations and liabilities pursuant to s. 608,4421. ..."

72.     Actually, Nerdapalooza, Carter, Kissel and Thew made a false statement in the Articles for Dissolution, because they had not complied with §608.4421 of the *Fla. Stat.* regarding the amounts owed to TMBI.

73.     Specifically, Nerdapalooza, Carter, Kissel and Thew did not comply with §608.4421 (2) – (7) in that **they failed to**:

> a.  comply with (2) and deliver to each of its known claimants, such as Plaintiff, written notice of the dissolution at any time after its effective date. And, did not;
>
> b.  provide written notice giving a reasonable description of the claim that the claimant, such as Plaintiff, may be entitled to assert;
>
> c.  state whether the claim is admitted or not admitted, in whole or in part, and, if admitted:
>
>> 1.     The amount that is admitted, which may be as of a given date.
>>
>> 2.     Any interest obligation if fixed by an instrument of indebtedness.
>
> d.  Provide a mailing address where a claim may be sent.
>
> e.  State the deadline, which may not be fewer than 120 days after the effective date of the written notice, by which confirmation of the claim must be delivered to the dissolved limited liability company.
>
> f.  State that the limited liability company may make distributions thereafter to other claimants and its members or former members without further notice.

g. comply with (3) and issue by mail a written notice rejecting in whole or in part, any claim made by Plaintiff pursuant to this subsection by mailing written notice of such rejection to Plaintiff within 90 days after receipt of such claim.

h. comply with (4) by electing to follow the procedures described in subsections (2) and (3) and giving notice of the dissolution of the limited liability company to persons with claims contingent upon the occurrence or nonoccurrence of future events or otherwise conditional or unmatured, and request that such persons present such claims in accordance with the terms of such notice, in substantially the form, and sent in the same manner, as described in subsection (2).

i. comply with (5) and offer any claimant whose claim is contingent, conditional, or unmatured such security as the limited liability company determines is sufficient to provide compensation to the claimant if the claim matures. And, Nerdapalooza failed to deliver such offer to the claimant within 90 days after receipt of such claim.

j. comply with (6) and petition the circuit court in the county where the limited liability company's principal office is located or was located at the effective date of dissolution to determine the amount and form of security that will be sufficient to provide compensation to any claimant who has rejected the offer for security made pursuant to subsection (5).

k. comply with (7) and petition the circuit court in the county where the limited liability company's principal office is located or was located at the effective date of dissolution to determine the amount and form of security which will be sufficient to provide compensation to claimants whose claims are known to the limited liability company but whose identities are unknown; and failed to request the court to appoint a guardian ad litem to represent all claimants whose identities are unknown in any proceeding brought under this subsection.

74.     Because Nerdapalooza, Carter, Kissel and Thew did not comply with §608.4421 (2) – (7), then Nerdapalooza, Carter, Kissel and Thew were not entitled to seek dissolution of Nerdapalooza, and Carter, Kissel and Thew are not entitled to the protections of the status of a limited liability company.

75.     Nerdapalooza, Carter, Kissel and Thew failed to comply with subsection (9) of

§608.4421, and not entitled to the protections of a limited liability company.

76.    Nerdapalooza and its members, Carter, Kissel and Thew are subject to the liabilities imposed under §608.4421 (10) – (13).

77.    Carter is individually liable for the breach of the contract with TMBI, and the issuance of the worthless or dishonored check (Exhibit "B").

78.    Although, it appears that the statement in the Articles of Dissolution at "fifth" that Nerdapalooza stated that the "Company Dissolving Because of Bankruptcy", this was a false statement, because TMBI cannot locate any bankruptcy filing for Nerdapalooza LLC, and no such notice or suggestion of bankruptcy for Nerdapalooza was sent to TMBI.

79.    On January 16, 2014, TMBI, through its counsel, sent to Nerdapalooza, Carter, Kissel and Thew an additional demand letter where TMBI notified them that: "…[T]wo (2) demand letters that were sent by certified mail to Nerdapalooza, LLC at 7512 Key Colony Ave., Apt. 2811, Winter Park, FL 32792-6952. The letters were returned as undelivered. I am also enclosing copies for the envelopes for your reference. …".   A copy of the letter is attached as Exhibit "H" and is incorporated as part of this Complaint by reference. (hereafter "the January letter").

80.    In the January letter, TMBI further stated:

…Since the offices of Nerdapalooza, LLC appear to be closed, and we have found no appropriate proceeding to dissolve the company or bankruptcy filing, I am addressing these demands to each of you. They Might Be, Inc. demands payment of the amounts due to it. Likewise, as you can see from the attached letters, They Might Be, Inc. has good cause to believe that (a) you as the Nerdapalooza, LLC members may be personally liable; and, (b) that this liability could include damages of three times the amount of the bad check that was tendered to They Might Be, Inc. …

81.    After filing and service of the lawsuit in this case, Nerdapalooza, failed to respond to the Complaint and a Partial Default Final Judgment for ONE HUNDRED FIFTY-SIX

THOUSAND FOUR HUNDRED TWENTY-THREE DOLLARS ($156,423.00) was entered against Nerdapalooza for issuance of a worthless check. (Exhibit "A").

**COUNT I – PERSONAL LIABILITY OF CARTER – CHAPTER 608, FLA. STAT.**

82.     TMBI sues Carter for personal liability pursuant to Chapter 608 of the Florida Statutes and Plaintiff realleges paragraphs 1-73, above.

83.     Carter violated Chapter 608 of the Florida Statutes, including but not limited to F.S. 608.4421, 608.444 and 608.708, by dissolving Nerdapalooza and distributing funds earned from "Nerdapalooza 2013" and its other funds and assets, but not providing for the payment of the amount of money owed to TMBI.

84.     Carter violated Chapter 608 of the Florida Statutes, including but not limited to F.S. 608.4421, 608.444 and 608.708, by dissolving Nerdapalooza, and distributing funds earned from "Nerdapalooza 2013" and its other funds and assets, and intentionally refusing to maintain enough moneys in its bank account to pay for the check issued to TMBI.

85.     On information and belief, Carter, in concert with Kissel and Thew, intentionally dissolved Nerdapalooza and intentionally distributed the funds earned from "Nerdapalooza 2013" and other funds and assets of Nerdapalooza, but did not provide for payment of the check issued to TMBI.

86.     Carter is personally liable to TMBI for the above acts and violations of Chapter 608 of the Florida Statutes.

87.     Carter is personally liable for payment of the Final Judgment obtained against Nerdapalooza in the amount of ONE HUNDRED FIFTY-SIX THOUSAND FOUR HUNDRED TWENTY-THREE AND NO/100 DOLLARS ($156,423.00) and all additional interest, fees and costs.

WHEREFORE, pursuant to Chapter 608, of the *Fla. Stat.,* including but not limited to F.S. §§ 608.4421, 608.444 and 608.708, TMBI requests a judgment against Carter for damages based upon the Final Judgment previously entered against Nerdapalooza, including all interest, costs and attorney's fees that may be awarded under the Final Judgment.

### COUNT II – PERSONAL LIABILITY OF CARTER – PIERCING THE VEIL

88.     TMBI sues Carter for personal liability due to the misconduct of Nerdapalooza, Carter, Kissel and Thew, and Plaintiff realleges paragraphs 1-73, above.

89.     Carter, Kissel and Thew, through Nerdapalooza, issued the worthless check to TMBI on October 19, 2013.

90.     Within ten (10) days after issuing the worthless check to TMBI, Carter, Kissel and Thew filed papers with the Secretary of State of Florida to dissolve Nerdapalooza.

91.     Within that ten (10) days or proximate to that time, Carter, Kissel and Thew distributed the funds received from "Nerdapalooza 2013", but made no effort to pay any portion of the check they delivered to TMBI on October 19, 2013.

92.     Further, on October 29, 2013, Carter, Kissel and Thew, jointly or with the acquiescence of each other, dissolved Nerdapalooza and distributed the funds received from "Nerdapalooza 2013" and made no attempt to pay any portion of the money still owed to TMBI.

93.     Carter, Kissel and Thew, jointly or with the acquiescence of each other, affirmatively misrepresented in the Articles of Dissolution submitted to the Secretary of State of Florida, that provision had been made for paying the debts owed to Nerdapalooza's creditors, including TMBI.

94.     Even after being notified that the check issued and delivered to TMBI was dishonored or worthless and receiving demands for payment, Carter made no effort to:

A.     meet, set aside the dissolution and reinstate Nerdapalooza;

B.     attempt to pay any portion of the amounts owed to TMBI; or

C.     attempt to correct the false statements submitted to the Secretary of State in the Articles of Dissolution.

95.     The acts of Carter individually and through the entity of Nerdapalooza constitute acts of fraud or misconduct toward a creditor, that justify piercing of the veil of limited liability normally afforded a limited liability company.

96.     Because of the above acts of fraud and misconduct of Carter, individually and through Nerdapalooza, Carter is personally liable for payment of the Final Judgment OF ONE HUNDRED FIFTY-SIX THOUSAND FOUR HUNDRED TWENTY-THREE DOLLARS ($156,423.00) that is due with all applicable interest, costs and fees.

WHEREFORE, TMBI requests that a judgment be entered against Carter for damages together with all appropriate interest, costs and attorney's fees, or that the Court grant such other appropriate relief.

## COUNT III – CONSPIRACY TO DEFRAUD

97.     TMBI realleges paragraphs 1-73, above.

98.     Carter, Kissel and Thew were parties to a civil conspiracy to defraud TMBI.

99.     Carter on or about October 19, 2013 and continuing at least through October 29, 2013, conspired to do unlawful acts or to do lawful acts by unlawful means, that included:

A.     issuing a worthless check in the amount of thirty seven thousand five hundred dollars ($37,500.00) to TMBI;

B.     submitting a false statement in the Articles of Dissolution submitted to the Secretary of the State of Florida; and,

C.     distributing the funds and assets of Nerdapalooza in violation of Chapter 608 of the Florida Statutes, including F.S. 608.4421.

100.     Carter, Kissel and Thew committed overt acts in furtherance of their conspiracy,

including the representations made to TMBI that:

    A. That there were sufficient funds to pay for the performance by TMBI, when it
       was clear that attendance at the concert and receipts did not support that
       statement;

    B. Delivering a check for THIRTY-SEVEN THOUSAND FIVE HUNDRED
       AND NO/100 DOLLARS ($37,500.00) to TMBI when the funds were not
       available, and representing to TMBI that the funds would be paid later;

    C. Misrepresenting to TMBI between October 19, 2013 and October 29, 2013
       that the funds were being calculated or accumulated to pay the check; and,

    D. Falsely stating to the Secretary of State of Florida that creditors such as
       Plaintiff were being properly paid or compensated.

101.     The conspiracy by Carter, Kissel and Thew and their overt acts caused TMBI to

suffer damages.

WHEREFORE, TMBI requests that a judgment be entered against Carter for damages,

and all appropriate interest and costs.

### COUNT IV – FRAUDULENT MISREPRESENTATION

102.     TMBI realleges paragraphs 1 – 73, above.

103.     Carter, Kissel and Thew, in concert with each other, caused several false

statements to be made to TMBI concerning material facts.  These included:

    A.    Statements by Kissel and Thew prior to "Nerdapalooza 2013" to TMBI
        and tour manager, Scott Bozack, that implied that "Nerdapalooza 2013"
        would generate sufficient funds to pay for the performance by TMBI,
        when Kissel and Thew knew that pre concert sales were very sparse;

    B.    Carter's statement at the concert that there were sufficient funds to pay for
        the performance by They Might Be Giants, when it was clear that
        attendance at the concert and receipts did not support that statement;

    C.    Thew's statement when delivering the check for THIRTY-SEVEN
        THOUSAND FIVE HUNDRED DOLLARS ($37,500.00) to Scott
        Bozack, guaranteeing that the check would be paid, when the funds were

not available, and representing to TMBI that the funds would be paid later; and

D.   Thew's statements to TMBI between October 19, 2013 and October 29, 2013 that the funds were being calculated or accumulated to pay the check.

104.   Carter, Kissel and Thew knew that the above representations and other false representations were false.

105.   Carter, Kissel and Thew intentionally made the above false representations to induce TMBI and the band, They Might Be Giants, to perform at "Nerdapalooza 2013".

106.   TMBI and the band, They Might Be Giants, reasonably relied upon these representations to their detriment.

107.   Further, Carter, Kissel and Thew fraudulently concealed from TMBI even more facts about "Nerdapalooza 2013", regarding the lack of attendance and money that would be earned from the concert in order to induce TMBI and the band, They Might Be Giants, to perform at the concert.

WHEREFORE, TMBI requests a judgment against Carter, Kissel and Thew, jointly and severally, or individually, for damages, interest and costs.

## COUNT V - ISSUANCE OF WORTHLESS OR DISHONORED CHECK

108.   TMBI realleges the allegations in paragraphs 1- 73, above.

109.   On October 19, 2013 Carter executed and authorized delivery of a written order for the payment of THIRTY-SEVEN THOUSAND AND FIVE HUNDRED DOLLARS ($37,500.00), commonly called a check, a copy being attached as Exhibit "B" (Check No. 1169 drawn on JPMorgan Chase Bank), payable to the order of TMBI and delivered it to TMBI.

110.   The check was presented for payment to the drawee bank but payment was refused.

111.   TMBI holds the check and it has not been paid.

112.   Carter owes TMBI ONE HUNDRED FIFTY-ONE THOUSAND EIGHT HUNDRED SEVENTY-FIVE DOLLARS ($151,875.00) that is due with interest from October 19, 2013 on the check.

113.   TMBI has retained the services of the undersigned counsel and is obligated to pay its counsel a reasonable fee for his services.

WHEREFORE, TMBI request judgment against Carter for damages of ONE HUNDRED FIFTY-ONE THOUSAND EIGHT HUNDRED SEVENTY-FIVE DOLLARS ($151,875.00), plus interest, costs and all applicable attorney's fees authorized by §68.065. *Fla. Stat.*

## DEMAND FOR JURY TRIAL

TMBI hereby demands trial by jury on all issues so triable.

Respectfully submitted,

Dennis F. Wells, Esquire
Florida Bar No.: 368504
Alex Finch, Esquire
Florida Bar No.: 0949220
Webb, Finch & Wells, P.A.
280 Wekiva Springs Road, Suite 2090
Longwood, Florida 32779
Tel:  (407) 865-5600
Fax:  (407) 865-6495
Primary Email: denniswells2@me.com
Secondary: webbwellswilliam@aol.com
Attorneys for Plaintiff/Creditor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to:

**Jeanne A. Kraft, Esquire**, Wolff, Hill, McFarlin & Herron, P.A., 1851 West Colonial Drive,

Orlando, FL  32804 (jkraft@whmh.com; jupdike@whmh.com; psmith@whmh.com) this 5th day of February, 2015.

Respectfully submitted,

Alex Finch, Esquire
Florida Bar No.: 0949220
Webb, Finch & Wells, P.A.
280 Wekiva Springs Road, Suite 2090
Longwood, Florida 32779
Tel:   (407) 865-5600
Fax:   (407) 865-6495
Primary Email: denniswells2@me.com
Secondary: webbwellswilliam@aol.com
Attorneys for Plaintiff/Creditor

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

THEY MIGHT BE, INC.,
a foreign corporation,

      Plaintiff,

vs.                           CIVIL ACTION NO: 2014-CA-002078-O

NERDAPALOOZA, LLC,
a Florida Limited Liability Company,
JOHN T. CARTER, BRYAN KISSEL,
and JOSHUA THEW,

      Defendants.

_____/

## PARTIAL DEFAULT FINAL JUDGMENT

      THIS CAUSE came before the Court on Plaintiff's Motion For Partial Default Final

Judgment as to Defendant NERDAPALOOZA, LLC, and the Court having reviewed the file and

having heard from counsel for Plaintiff, finds the following:

      1. Defendant NERDAPALOOZA, LLC was served with a copy of the Complaint and

Summons in this case on March 24, 2014.

      2. Defendant NERDAPALOOZA, LLC failed to serve any papers on Plaintiff or its

counsel, or file any paperwork as required by law, and the Clerk of the Court entered a default

against Defendant NERDAPALOOZA, LLC on May 27, 2014.

      3. In Count 1 of the Complaint, Plaintiff sued NERDAPALOOZA, LLC for breach of

contract and damages in the amount of $37,500.  However, because NERDAPALOOZA, LLC

breached the contract by paying Plaintiff with a worthless check in the amount of $37,500, in

Count 5 of the Complaint Plaintiff also sued NERDAPALOOZA, LLC for issuance of a

# EXHIBIT "A"

worthless or dishonored check in the amount of $37,500.

    4.  Plaintiff is entitled to a judgment for the highest amount, or the award for failure of NERDAPALOOZA, LLC to answer Count 5 of the Complaint.

    5.  In Count 5 and paragraph 74 of the Complaint Plaintiff alleged that NERDAPALOOZA, LLC owes Plaintiff $151,975 plus interest from October 19, 2013, and all applicable attorney's fees.

    6.  Plaintiff is entitled to a Final Judgment against NERDAPALOOZA, LLC in the amount of $151,975 plus interest from October 19, 2013, and all applicable attorney's fees, pursuant to Section 68.065 of the Florida Statutes.

    7.  The amount of $151,975 claimed by Plaintiff is a liquidated debt, and does not require trial by jury in order for the Court to enter a Final Judgment against Defendant NERDAPALOOZA, LLC.

    8.  The amount of statutory interest owed on $151,975 from October 19, 2013 through June 1, 2014 is also liquidated, and capable of a ministerial calculation. The statutory interest rate in effect for this case from October 19, 2013 to June 1, 2014 is 4.75 percent per annum or .0130137 percent per day. Therefore, the amount of statutory interest that Defendant NERDAPALOOZA, LLC owes Plaintiff on $151,975 is $19.77 per day (calculated as follows: $151,975 x .000130137). The number of days between October 19, 2013 and June 1, 2014 is 225 days. So, the total prejudgment statutory interest owed by Defendant NERDAPALOOZA, LLC, as of June 1, 2014 is $4,448. The total amount that Defendant NERDAPALOOZA, LLC owes Plaintiff on June 1, 2014, with statutory interest is $156,423, before calculation of attorney's fees and costs due to Plaintiff. And, that amount ($156,423) continues to earn interest at $19.77 each day, thereafter.

9.  Plaintiff is also entitled to an award of attorney's fees and costs, and Plaintiff shall be afforded a hearing to determine the amount of attorney's fees after entry of the Partial Final Judgment against Defendant NERDAPALOOZA, LLC.

10.  The Court further finds that Plaintiff has not waived, and is entitled to seek, all other legally appropriate relief against Defendants JOHN T. CARTER, BRYAN KISSEL and JOSHUA THEW, and therefore the Court makes no rulings at this time concerning Defendants JOHN T. CARTER, BRYAN KISSEL and JOSHUA THEW.

WHEREFORE IT IS ORDERED AND ADJUDGED that Plaintiff, THEY MIGHT BE, INC., whose principal address is care of The Hornblow Group USA, Inc., 38 High Avenue, 4th Floor, Nyack, NY 10960, shall recover, from the Defendant, NERDAPALOOZA, LLC whose principal address is 7512 Key Colony Ave., Apt. 2811, Winter Park, Florida 32792, the sum of One Hundred Fifty Six Thousand Four Hundred Twenty Three Dollars ($156,423) as of June 1, 2014, and that said amount ($156,423) shall bear interest at the statutory rate of interest for the current year, which is presently $19.77 for each day the judgment is unpaid, and thereafter at the prevailing rate per year as provided for by Florida Statute, for all of which let execution issue.

It is further ordered and adjudged that the Defendant NERDAPALOOZA, LLC, shall complete Florida Rules Form 1.977 (Fact Information Sheet) (Exhibit "A") and return it to the Plaintiff's attorney, Dennis Wells, Webb, Finch & Wells, P.A. 280 Wekiva Springs Road, Suite 2090, within 45 days from the date of this final judgment, unless the final judgment is satisfied or notice of appeal is filed.

Jurisdiction of this case is retained to enter further orders that are proper to compel the Defendant, NERDAPALOOZA, LLC to complete form 1.977 and return it to the Plaintiff's attorney, and to determine the award of further costs and attorney's fees that may be

legally appropriate in this case, including, but not limited to, those attorney's fees necessary for the collection or enforcement of this judgment, and to further enforce this judgment, for all of which let execution issue.

DONE AND ORDERED in Chambers at Orange County Courthouse, Orlando, Florida this _23.2_ day of June, 2014.

/s/ Donald A. Myers, Jr.
~~Circuit Judge~~
DONALD A. MYERS
CIRCUIT JUDGE

## CERTIFICATE OF SERVICE

I CERTIFY that a copy hereof has been furnished by email delivery to Dennis Wells, Esquire, attorney for Plaintiff (denniswells2@me.com), James A. Edwards, Esquire, Attorney for Bryan Kissel, (jimedwards@zkslawfirm.com, mwilson@zkslawfirm.com, ncoffman@zkslawfirm.com); Jeanne A. Kraft, Esquire, Attorney for John T. Carter, (jkraft@whmh.com, jupdike@whmh.com, psmith@whmh.com); and Patryk Ozim, Esquire, Attorney for Joshua Thew, (pozim@martellandozim.com) this _23-2_ day of June, 2014.

~~Judicial Assistant~~ *Dennis Wells*

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

THEY MIGHT BE, INC.,
a foreign corporation,

     Plaintiff,

vs.                         CIVIL ACTION NO:   2014-CA-002078-O

NERDAPALOOZA, LLC,
a Florida Limited Liability Company,
JOHN T. CARTER, BRYAN KISSEL,
and JOSHUA THEW,

     Defendants.
_____/

## FACT INFORMATION SHEET
## (BUSINESS ENTITY)

Name of entity: _____

Name and title of person filling out this form: _____

Telephone number: _____

Place of business: _____

Mailing address (if different): _____

Gross/taxable income reported for federal income tax purposes last three years:

$_____ / $_____ ; $_____ /

$_____ ; $_____ / $_____

Taxpayer identification number: _____

Is this entity a subchapter S corporation for federal income tax purposes? _____ **Yes**

_____ No

Average number of employees per month _____

Name of each shareholder, member, or partner owning 5% or more of the entity's common stock,

preferred stock, or other equity interest: _____

_____

_____

_____

_____

_____

Names of officers, directors, members, or partners: _____

_____

_____

_____

_____

_____

Checking account at: _____

Account # _____

Checking account at: _____

Account # _____

Checking account at: _____

Account # _____

Checking account at: _____

Account # _____

Savings account at: _____

Account # _____

Savings account at: _____

Account # _____

Savings account at: _____

Account # _____

Savings account at: _____

Account # _____

Does the entity own any vehicles? _____ Yes _____ No

For each vehicle please state:

Year/Make/Model: Color: _____

Vehicle ID No: _____

Tag No: _____ Mileage: _____

Names on Title:

Present Value: $_____

Loan Owed to: _____

Balance on Loan: $_____

Monthly Payment: $_____

Year/Make/Model: Color: _____

Vehicle ID No: _____

 Tag No: _____ Mileage: _____

Names on Title:

Present Value: $_____

Loan Owed to: _____

Balance on Loan: $_____

Monthly Payment: $_____

Year/Make/Model: Color: _____

Vehicle ID No: _____

Tag No: _____ Mileage: _____

Names on Title:

Present Value: $_____

Loan Owed to: _____

Balance on Loan: $_____

Monthly Payment: $_____

Year/Make/Model: Color: _____

Vehicle ID No: _____

Tag No: _____ Mileage: _____

Names on Title:

Present Value: $_____

Loan Owed to: _____

Balance on Loan: $_____

Monthly Payment: $_____

Does the entity own any real property? _____ Yes _____ No

If yes, please state the address(es): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Please check if the entity owns the following:

_____ Boat

_____ Camper

_____ Stocks/bonds

_____ Other real property

_____ Other personal property

**Please attach copies of the following:**

1.  **Copies of state and federal income tax returns for the past 3 years.**

2.  **All bank, savings and loan, and other account books and statements for accounts in institutions in which the entity had any legal or equitable interest for the past 3 years.**

3.  **All canceled checks for the 12 months immediately preceding the service date of this Fact Information Sheet for accounts in which the entity held any legal or equitable interest.**

4.  **All deeds, leases, mortgages, or other written instruments evidencing any interest in or ownership of real property at any time within the 12 months immediately preceding the date this lawsuit was filed.**

4

5.  Bills of sale or other written evidence of the gift, sale, purchase, or other transfer of any personal or real property to or from the entity within the 12 months immediately preceding the date this lawsuit was filed.

6.  Motor vehicle or vessel documents, including titles and registrations relating to any motor vehicles or vessels owned by the entity alone or with others.

7.  Financial statements as to the entity's assets, liabilities, and owner's equity prepared within the 12 months immediately preceding the service date of this Fact Information Sheet.

8.  Minutes of all meetings of the entity's members, partners, shareholders, or board of directors held within 2 years of the service date of this Fact Information Sheet.

9.  Resolutions of the entity's members, partners, shareholders, or board of directors passed within 2 years of the service date of this Fact Information Sheet.

UNDER PENALTY OF PERJURY, I SWEAR OR AFFIRM THAT THE FOREGOING ANSWERS ARE TRUE AND COMPLETE.

NERDAPALOOZA, LLC

_____

**Judgment Debtor's Designated Representative/Title**

STATE OF FLORIDA
COUNTY OF _____

    SUBSCRIBED AND SWORN TO BEFORE ME on _____, 2014
By_____.

_____
Notary Public, State of Florida

_____
(Print, Type, or Stamp Commissioned Name of Notary Public)

5

Personally Known _____ OR Produced Identification _____

Type of Identification Produced _____

_____


**THE JUDGMENT DEBTOR SHALL FILE WITH THE CLERK OF THE COURT A
NOTICE OF COMPLIANCE AFTER THE ORIGINAL FACT INFORMATION SHEET,
TOGETHER WITH ALL ATTACHMENTS, HAS BEEN DELIVERED TO THE
JUDGMENT CREDITOR'S ATTORNEY, OR TO THE JUDGMENT CREDITOR IF
THE JUDGMENT CREDITOR IS NOT REPRESENTED BY AN ATTORNEY.**

# high road touring

Phone: (415) 332-9292
Fax: (415) 332-4692

Contract 128061

Agreement made this, April 23, 2013 by and between They Might Be Inc. f/s/o They Might Be Giants (hereinafter referred to as Artist) and Nerdapalooza LLC (hereinafter referred to as Purchaser). It is understood and mutually agreed that the Purchaser engages the Artist to perform the following engagement upon all the terms and conditions hereunder set forth:

**ARTIST:** They Might Be Giants    100% Headline

**VENUE:** Orange County Convention Center  Convention Center   9990 International Dr., Orlando, FL 32819, USA

**PRODUCTION:** James Ianareli 306.254.2642 emptihalt@gmail.com

**SHOWDATES:**
  Sat, Oct 19, 2013

**TICKETS:**

| Description | Quantity | Comps | Kills | Price | Deductions | GP | Adjusted GP |
|---|---|---|---|---|---|---|---|
| GA | 5,000 | 0 | 0 | 0.00 | 0 | 0.00 | 0.00 |
|  | 5,000 | 0 | 0 |  |  | 0.00 | 0.00 |
| Total Shows: 1 | 5,000 | 0 | 0 |  | Gross Potential: | | 0.00 |
| Facilities Ticket Surcharge: 0 | | | | | Adjusted Gross Potential: | | 0.00 |
| Ticket price is still TBD | | | | | Tax (%): Tax Total: | | 0.00 |
| | | | | | Net Potential: | | 0.00 |

**TERMS:** 50,000.00 US Dollar (USD) guarantee paid to Artist.

**ADDITIONAL PROVISIONS:**
  Purchaser agrees to provide in house (sound and lights)
  Purchaser shall provide any and all rider requirements as per Artist's specifications and approval, at no cost to Artist.
  Unless Agreed to in advance by Artist's Agent, all shows are to be age restricted to 14 plus (NOT ALL AGES).
  Contract Due to High Road Touring by 4/30/2013

**EVENT SPECIFICS:**
  SATURDAY, OCTOBER 19, 2013 12 NOON BAND
  Doors Open: 11 AM    Show Time: 12 noon    Onstage Time: 12:30 PM    Curfew:    Age Limit: All ages
  Note: TMBG support to play directly preceding them

**MERCHANDISING RATES:**
  Building Sell Merchandise %:    Artist Sell Merchandise %: 100
  Building Sell Recorded Product %:    Artist Sell Recorded Product %: 100
  Notes:

**OTHER ARTIST(S) PAID BY PROMOTER:**
  1    tbd    75% Special Guest    500 US Dollar (US$)

**PAYMENTS:**
  12500 US Dollar (US$) Deposit to this Agency by certified check or bank wire only due by: 4/30/2013
  SECOND DEPOSIT OF $12,500 DUE MONDAY AUGUST 19
  Balance of payment with any applicable overages in cash or company check is due on the night of show made payable to Artist's touring entity.

  High Road Touring Bank Wire Information: Bank of Marin, ABN# 121141977 ACCOUNTS 07 508529

No performance on the engagement shall be recorded, reproduced, or transmitted from the place of performance, in any manner or by any means whatsoever, in the absence of a specific written agreement with the Artist.
It is understood by the Purchaser and the Artist that no parties to this contract that neither High Road Touring nor its employees nor directors are parties to this contract in any capacity other than as Agent and, therefore, that neither High Road Touring nor its employees nor directors shall be liable for the performance or breach of any provision hereof.
This contract shall not be binding unless signed by all parties hereto. Should any Additional Provision(s), Rider, Addendum, and/or Deposit sheet be annexed to this Agreement it/they shall also constitute a part of this agreement and shall be signed by all parties to this contract.
This agreement of the Artist to perform is subject to proven detention by sickness, accidents, riots, strikes, epidemics, acts of God, or any other legitimate conditions beyond their control. IN WITNESS WHEREOF, the parties have executed this Agreement as the date first above written.

They Might Be Inc. f/s/o They Might Be Giants
22-2958236

Nerdapalooza LLC
Signatory: John T. Carter    Fed ID#: (25167165)

X _____    X _____
C/O High Road Touring;    757 Key Colony Ave, # 2811, Winter Park, FL 32792, USA
Booking Agent: Dave Rowan    (415) 332-9292    Fax:(415) 332-4692    Phone:    Fax:
    Contact: Joshua Thew

X _Scott B____    c/o Joshua Thew

    X _____
    10.19.13

# EXHIBIT "B"

10- 14/20 -13



EXHIBIT "C"

Frank, Pete

Guys, I have the remainder of the balance ($37,500.00) in check form. They, Joshua Thew (Nerdapalooza) are telling me they don't have all this in the bank- Shy about $1500( i am being told).  I wan't to go on record saying that "this is an issue and that they are asking for us to drop the fee to help accommodate their loss."  I have explained to them that i can not authorize this.  This matter is between High Road and Hornblow and They Might Be Giants.  Being that this is a signed contractual agreement this matter will have to be resolved.  I have the check and the parties involved will sign this with the intent to make good on the contractual payment-  See signed invoice attached which both parties  will resign and date tonight.
The show was performed at the Orange County Convention Center address: 9800 International Dr. Orlando FL 32819.  Todays show date was 10-19-13.  It is now, 10-20-13 1:48am.


Scott Bozack

Joshua Thew


<div style="text-align:center">EXHIBIT "D"</div>

# WEBB, WELLS & WILLIAMS, P.A.

### ATTORNEYS AT LAW

260 WEKIVA SPRINGS ROAD, SUITE 1070
LONGWOOD, FLORIDA 32779

PHONE (407) 865-5600                                    FAX (407) 865-6495

December 5, 2013

Nerdapalooza LLC
7512 Key Colony Ave.
Apt. 2811
Winter Park, FL 32792-6952

*Via U.S. Mail and Certified Mail*

Subject: They Might Be Inc. – Demand For Payment

I represent They Might Be Inc. and this letter is to demand payment of the amount that was originally tendered by Nerdapalooza LLC in a check number 1169, dated October 19, 2013, drawn on JPMorgan Chase Bank, N.A., for the amount of $37,500. This demand is made because when They Might Be Inc. deposited the check it was returned for "insufficient funds".

Pursuant to Section 68.085 of the Florida Statutes:

Nerdapalooza LLC is hereby notified that a check numbered 1169 in the face amount of $37,500 issued by JPMorgan Chase Bank, N.A. on October 19, 2013 made payable to They Might Be Inc. has been dishonored. Pursuant to Florida law, Nerdapalooza LLC has 30 days from receipt of this notice to tender payment in cash of the full amount of the check plus a service charge of $25, if the face value does not exceed $50, $30, if the face value exceeds $50 but does not exceed $300, $40, if the face value exceeds $300, or 5 percent of the face amount of the check, whichever is greater, the total amount due being $1,875. Unless this amount is paid in full within the 30-day period, The Might Be Inc., the holder of the check or instrument, may file a civil action against Nerdapalooza LLC for three times the amount of the check, but in no case less than $50, in addition to the payment of the check plus any court costs, reasonable attorney fees, and any bank fees incurred by the payee in taking the action."

Section 68.065 of the Florida Statutes states:

... (1) In any civil action brought for the purpose of collecting a check, draft, or order of payment, the payment of which was refused by the drawee because of the lack of funds, credit, or an account, or where the maker or drawer stops payment on the check, draft, or order of payment with intent to defraud, and where the maker or drawer fails to pay the amount owing, in cash, to the payee within 30

# EXHIBIT "E"

days following a written demand therefore, as provided in subsection (3), the maker or drawer shall be liable to the payee, in addition to the amount owing upon such check, draft, or order, for damages of triple the amount so owing. However, in no case shall the liability for damages be less than $50. The maker or drawer shall also be liable for any court costs and reasonable attorney fees incurred by the payee in taking the action. Criminal sanctions, as provided in 832.07, may be applicable. (2) The payee may also charge the maker or drawer of the check, draft, or order of payment a service charge not to exceed the service fees authorized under s. 832.08(5) or 5 percent of the face amount of the instrument, whichever is greater, when making written demand for payment. In the event that a judgment or decree is rendered, interest at the rate and in the manner described in s. 55.03 may be added toward the total amount due. Any bank fees incurred by the payee may be charged to the maker or drawer of the check, draft, or order of payment. ...

Unless Nerdapalooza LLC pays the check within 30 days then They Might Be Inc. will be entitled to a judgment in the amount of the check ($37,500) ($1,875 the service charge of 5 percent of the check) plus three times the amount of the check ($112,500) for a total judgment of $151,875, plus interest at the statutory rate, bank fees, costs of filing suit, and attorneys fees. For further reference of how the Florida courts interpret this type of claim, Nerdapoolaza LLC or its counsel may wish to review the case of *NASR Intern. Trading, Co., Inc. v. Rahul International Inc.,* 675 So.2d 704 (Fla. 3d DCA 1996).

In addition, you should be aware that the officers of Nerdapalooza LLC who knowingly authorized the signing and tender of a worthless check run the risk of being subject to criminal penalties. Section 832.041 of the Florida Statutes states:

...Whoever, with intent to defraud any person shall, in person or by agent, make, draw, utter, deliver, or give any check, draft, or written order for the payment of money upon any bank, person, or corporation and secure from such person goods or services for or on account of such check, draft, or written order, whether such goods or services are valued at the amount of such check, draft, or written order or at a greater or lesser value, and who shall, pursuant to and in furtherance of such intent to defraud, stop payment on such check , draft, or written order, shall be deemed to be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if the value of the goods or services secured for or on account of such check, draft, or written order is $150 or more; and if the value of the goods or services secured for or on account of such check, draft, or written order is less than $150, he or she shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or 775.083. ...

In summary, The Might Be Inc. demands that Nerdapalooza LLC pay $37,500 plus the service charge of $1,875 within thirty (30) days, plus attorneys fees. We estimate those to be $225.00 at this time. If Nerdapalooza LLC does not pay the full amount of $39,600 within thirty (30) days then Nerdapalooza LLC and those who knowingly authorized the preparation and

tender of the dishonored check may be subjected to a lawsuit for damages in excess of $151,875, plus interest, costs and attorneys fees.

I look forward to hearing from Nerdapalooza LLC or its counsel.

Respectfully

*Dennis Wells*

Dennis Wells

DFW/hw
cc. They Might Be Inc.

10-14/02-13



# WEBB, WELLS & WILLIAMS, P.A.

### ATTORNEYS AT LAW

260 WEKIVA SPRINGS ROAD, SUITE 1070
LONGWOOD, FLORIDA 32779

PHONE (407) 865-5600                                             FAX (407) 865-6495

December 5, 2013

Nerdapalooza LLC
Attention: John T. Carter, Bryan Kissel and Josh Thew
7512 Key Colony Ave.
Apt. 2811
Winter Park, FL  32792-6952

*Via U.S. Mail and Certified Mail*

Subject:  They Might Be Inc. – Demand For Payment

I represent They Might Be Inc. and this letter is to demand payment of the $37,500 that is owed by Nerdapalooza LLC.

Enclosed is a copy of the contract between Nerdapalooza LLC and They Might Be Inc. You will note that the contract was reaffirmed or resigned by Joshua Thew. In addition, I am enclosing a copy of the letter or note that was also signed by Joshua Thew where, by signing, he acknowledges that it states in part; "…the parties involved will sign with the intent to make good on the contractual payment …"

A dishonored check in the amount of $37,500 was delivered by Nerdapalooza LLC. No further attempt to pay the amount due has been made. In another letter I have submitted They Might Be Inc.'s demand for payment of the dishonored check.

Nerdapalooza LLC, and we believe its members, individually, still owe They Might Be, Inc. the $37,500 that Nerdapalooza LLC contractually agreed to pay.

We have become aware that Nerdapalooza LLC has now filed Articles of Dissolution with the Florida Secretary of State's office. The Articles of Dissolution were electronically signed by John T. Carter, Bryan Kissel and Josh Thew. By their signatures John T. Carter, Bryan Kissel and Josh Thew state that, pursuant to Section 817.155 of the Florida Statutes, each of them have certified that the eight statements above were truthful. A copy of the Articles of Dissolution are also enclosed with this letter. Each of these members has subjected himself to potential criminal liability under Section 817.155, and for your reference I am enclosing a copy of that statute.

# EXHIBIT "F"

Likewise, it appears that the members, John T. Carter, Bryan Kissel and Josh Thew, may have violated Section 817.155, when in the sixth statement they assert that "...Adequate provision has been made for the debts, obligations and liabilities pursuant to s. 608.4421. We believe that this is a false statement. I am enclosing a copy of section 608.4421 for your reference and you should be able to see that Nerdapalooza LLC has not complied with section 608.4421 regarding the amounts owed to They Might Be Inc. Specifically, I direct your attention to section 608.4421 (2) – (7), which we believe have not been met. Likewise, Nerdapalooza LLC has not complied with subsection (9) of section 608.4421. Therefore, we believe that Nerdapalooza and its members, John T. Carter, Bryan Kissel and Josh Thew, are subject to the liabilities imposed under Section 608.4421 (10) – (13).

In addition, it appears that the statement in the Articles of Dissolution at "fifth" that the "Company Dissolving Because of Bankruptcy" is also false, because we cannot locate any bankruptcy filing for Nerdapalooza LLC, and no such notice of bankruptcy has been sent to They Might Be Inc.

So, in summary, Nerdapalooza LLC and its members, John T. Carter, Bryan Kissel and Josh Thew are hereby given notice that the $37,500 owed to They Might Be Inc. should be paid immediately. If Nerdapalooza LLC does not make this payment or properly comply with Section 608.4421 to provide for payment to They Might Be Inc. then They Might Be Inc. may likely proceed with all appropriate litigation. If Nerdapalooza LLC does not comply with Section 608.4421 then it and its members, John T. Carter, Bryan Kissel and Josh Thew, may be subject to criminal sanctions under Section 817.155.

I look forward to hearing from Nerdapalooza LLC or its counsel.


Respectfully

*Dennis Wells*

Dennis Wells


DFW/hw
cc. They Might Be Inc.

# high road touring

**Phone:** (415) 332-9292
**Fax:** (415) 332-4692

### * Contract 123861

Agreement made this date, **April 23, 2013** by and between They Might Be Inc. f/s/o They Might Be Giants (hereinafter referred to as Artist) and **Nerdapalooza LLC** (hereinafter referred to as Purchaser). It is understood and mutually agreed that the Purchaser engages the Artist to perform the following engagement upon all the terms and conditions hereinafter set forth.

**ARTIST:** They Might Be Giants    100% Headline

**VENUE:** Orange County Convention Center  Convention Center    9990 International Dr., Orlando, FL 32819, USA

**PRODUCTION:** James Januarelli 386.214.2842 kmjpthret@gmail.com

**SHOWDATES:**

Sat. Oct 19, 2013

**TICKETS:**

| Description | Quantity | Comps | Kills | Price | Deductions | GP | Adjusted GP |
|---|---|---|---|---|---|---|---|
| GA | 6,000 | 0 | 0 | 0.00 | 0 | 0.00 | 0.00 |
|  | 6,000 | 0 | 0 |  |  | 0.00 | 0.00 |
| Total Shows: 1 | 6,000 | 0 | 0 |  | **Gross Potential:** | 0.00 | |
| Facilities Ticket Surcharge: 0 |  |  |  | **Adjusted Gross Potential:** | 0.00 | | |
| Ticket price is still TBD |  |  |  | **Tax (%): Tax Total:** | 0.00 | | |
|  |  |  |  | **Net Potential:** | 0.00 | | |

**TERMS:** 50,000.00 US Dollar (US$) guarantee paid to Artist.

**ADDITIONAL PROVISIONS:**

Purchaser agrees to provide in house (sound and lights)
Purchaser shall provide any and all rider requirements as per Artist's specifications and approval, at no cost to Artist.
Unless agreed to in advance by Artist's Agent, all shows are to be age restricted to 14 plus (NOT ALL AGES).
**Contract Due to High Road Touring by 4/30/2013**

**EVENT SPECIFICS:**

SATURDAY, OCTOBER 19, 2013 12 NOON BAND!

Doors Open: 11 AM    Show Time: 12 noon    Onstage Time: 10:30 PM    Curfew:    Age Limit: all ages
Notes: TMBG support to play directly preceding them.

**MERCHANDISING RATES:**

Building Sold Merchandise %:        Artist Sold Merchandise %: 100
Building Sold Recorded Product %:    Artist Sold Recorded Product %: 100
Notes:

**OTHER ARTIST(S) PAID BY PROMOTER:**

1    tbd    75% Special Guest    300 US Dollar (US$)

**PAYMENTS:**

12500 US Dollar (US$) Deposit to this Agency by certified check or bank wire only due by: 4/30/2013

**SECOND DEPOSIT OF $12,500 DUE MONDAY AUGUST 19**
Balance of payment with any applicable overages in cash or company check is due on the night of show made payable to Artist's touring entity.

**High Road Touring Bank Wire information, Bank of Marin, ABA# 121141877 ACCOUNT# 07 500533**

No performance on the engagement shall be recorded, reproduced, or transmitted from the place of performance, in any manner or by any means whatsoever, in the absence of a specific written agreement with the Artist.
It is understood by the Purchaser and the Artist who are parties to this contract that neither High Road Touring nor it's employees nor directors are parties to this contract in any capacity other than as Agent and, therefore, that neither High Road Touring nor it's employees nor directors shall be liable for the performance of breach of any provision hereof.
This contract shall not be binding unless signed by all parties hereto. Should any Additional Provision(s), Rider, Addendum, and/or Expense sheet be annexed to this Agreement it/they shall also constitute a part of this agreement and shall be signed by all parties to this contract.
This agreement of the Artist to perform is subject to proven detention by sickness, accidents, riots, strikes, epidemics, acts of God, or any other legitimate conditions beyond their control.
IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

They Might Be Inc. f/s/o They Might Be Giants                Nerdapalooza LLC
22-2950238                                                    Signatory: Joan T. Carter    Fed ID#: 65-0767169

x _____                                    x _____
c/o High Road Touring;                                       7517 Key Colony Ave. # 2811, Winter Park, FL 32792, USA
Booking Agent: Dave Rowan    (415) 332-9292    Fax: (415) 332-4692    702.495.7278! ext
                                                             Contact: Joshua Thew

                                                             c/o Joshua Thew

X Sal B                                                      X _____

                                                             10·19·13

Frank, Pete

   Guys, i have the remainder of the balance ($37,500.00) in check form. They,
Joshua Thew (Nerdapalooza) are telling me they don't have all this in the bank- Shy
about $1500( i am being told).  I wan't to go on record saying that "this is an issue and
that they are asking for us to drop the fee to help accommodate their loss."  I have
explained to them that i can not authorize this. This matter is between High Road and
Hornblow and They Might Be Giants. Being that this is a signed contractual agreement
this matter will have to be resolved.  I have the check and the parties involved will sign
this with the intent to make good on the contractual payment-  See signed invoice
attached which both parties will resign and date tonight.
The show was performed at the Orange County Convention Center address: 9800
International Dr. Orlando FL 32819.  Todays show date was 10-19-13.  It is now.
10-20-13 1:48am.

Scott Bozack

Joshua Thew



Oct 29, 2013
**Secretary of State**

# ARTICLES OF DISSOLUTION

Pursuant to section 608.445, Florida Statutes, this Florida limited liability company submits the following Articles of Dissolution:

**FIRST:**      The name of the limited liability company as currently filed with the Florida Department of State:

NERDAPALOOZA, LLC

**SECOND:**    The document number of the limited liability company: L10000004931

**THIRD:**      The file date of the articles of organization: January 14, 2010

**FOURTH:**    The date the dissolution was approved: October 29, 2013

**FIFTH:**      A description of occurance that resulted in the limited liability company's dissolution pursuant to section 608.441, Florida Statutes:

COMPANY DISSOLVING BECAUSE OF BANKRUPTCY

**SIXTH:**      Adequate provision has been made for the debts, obligations and liabilities pursuant to s. 608.4421.

**SEVENTH:**   All remaining property and assets have been distributed among its members in accordance with their respective rights and interests.

**EIGHTH:**     There are no suits pending against the company in any court.

I/we submit this document and affirm that the facts stated herein are true.  I/we am/are aware that any false information submitted in a document to the Department of State constitutes a third degree felony as provided for in section 817.155, Florida Statutes.

Signature:  JOHN T CARTER
Electronic Signature of Member having the same percentage of membership interest necessary to approve the dissolution

Signature:  BRYAN KISSEL
Electronic Signature of Member having the same percentage of membership interest necessary to approve the dissolution

Signature:  JOSH THEW
Electronic Signature of Member having the same percentage of membership interest necessary to approve the dissolution

608.4421. Claims against dissolved limited liability company, FL ST § 608.4421

West's Florida Statutes Annotated
   Title XXXVI. Business Organizations (Chapters 605-623)
      Chapter 608. Limited Liability Companies (Refs & Annos)

West's F.S.A. § 608.4421

608.4421. Claims against dissolved limited liability company

Currentness

(1) A dissolved limited liability company may dispose of the known claims against it by following the procedures described in subsections (2), (3), and (4).

(2) The dissolved limited liability company shall deliver to each of its known claimants written notice of the dissolution at any time after its effective date. The written notice shall:

(a) Provide a reasonable description of the claim that the claimant may be entitled to assert.

(b) State whether the claim is admitted or not admitted, in whole or in part, and, if admitted:

1. The amount that is admitted, which may be as of a given date.

2. Any interest obligation if fixed by an instrument of indebtedness.

(c) Provide a mailing address where a claim may be sent.

(d) State the deadline, which may not be fewer than 120 days after the effective date of the written notice, by which confirmation of the claim must be delivered to the dissolved limited liability company.

(e) State that the limited liability company may make distributions thereafter to other claimants and its members or former members without further notice.

(3) A dissolved limited liability company may reject, in whole or in part, any claim made by a claimant pursuant to this subsection by mailing written notice of such rejection to the claimant within 90 days after receipt of such claim and, in all events, at least 150 days before expiration of 3 years following the effective date of dissolution. A notice sent by the limited liability company pursuant to this subsection shall be accompanied by a copy of this section.

(4) A dissolved limited liability company electing to follow the procedures described in subsections (2) and (3) shall also give notice of the dissolution of the limited liability company to persons with claims contingent upon the occurrence or nonoccurrence of future events or otherwise conditional or unmatured, and request that such persons present such claims in accordance with the terms of such notice. Such notice shall be in substantially the form, and sent in the same manner, as described in subsection (2).

(5) A dissolved limited liability company shall offer any claimant whose claim is contingent, conditional, or unmatured such security as the limited liability company determines is sufficient to provide compensation to the claimant if the claim matures. The dissolved limited liability company shall deliver such offer to the claimant within 90 days after receipt of such claim and, in all events, at least 150 days before expiration of 3 years following the effective date of dissolution. If the claimant offered such security does not deliver in writing to the dissolved limited liability company a notice rejecting the offer within 120 days after receipt of such offer for security, the claimant is deemed to have accepted such security as the sole source from which to satisfy the claimant's claim against the limited liability company.

(6) A dissolved limited liability company which has given notice in accordance with subsections (2) and (4) shall petition the circuit court in the county where the limited liability company's principal office is located or was located at the effective date of dissolution to determine the amount and form of security that will be sufficient to provide compensation to any claimant who has rejected the offer for security made pursuant to subsection (5).

(7) A dissolved limited liability company which has given notice in accordance with subsection (2) shall petition the circuit court in the county where the limited liability company's principal office is located or was located at the effective date of dissolution to determine the amount and form of security which will be sufficient to provide compensation to claimants whose claims are known to the limited liability company but whose identities are unknown. The court shall appoint a guardian ad litem to represent all claimants whose identities are unknown in any proceeding brought under this subsection. The reasonable fees and expenses of such guardian, including all reasonable expert witness fees, shall be paid by the petitioner in such proceeding.

(8) The giving of any notice or making of any offer pursuant to the provisions of this section shall not revive any claim then barred or constitute acknowledgment by the dissolved limited liability company that any person to whom such notice is sent is a proper claimant and shall not operate as a waiver of any defense or counterclaim in respect of any claim asserted by any person to whom such notice is sent.

(9) A dissolved limited liability company which has followed the procedures described in subsections (2)-(7):

(a) Shall pay the claims admitted or made and not rejected in accordance with subsection (3).

(b) Shall post the security offered and not rejected pursuant to subsection (5).

(c) Shall post any security ordered by the circuit court in any proceeding under subsections (6) and (7).

(d) Shall pay or make provision for all other obligations of the limited liability company.

Such claims or obligations shall be paid in full, and any such provision for payments shall be made in full if there are sufficient funds. If there are insufficient funds, such claims and obligations shall be paid or provided for according to their priority and, among claims of equal priority, ratably to the extent of funds legally available therefor. Any remaining funds shall be distributed pursuant to s. 608.444; however, such distribution may not be made before the expiration of 150 days from the date of the last notice of rejections given pursuant to subsection (3).

(10) A dissolved limited liability company which has not followed the procedures described in subsections (2) and (3) shall pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional, or unmatured claims known to the limited liability company and all claims which are known to the dissolved limited liability company but

608.4421. Claims against dissolved limited liability company, FL ST § 608.4421

for which the identity of the claimant is unknown. Such claims shall be paid in full, and any such provision for payment made shall be made in full if there are sufficient funds. If there are insufficient funds, such claims and obligations shall be paid or provided for according to their priority and, among claims of equal priority, ratably to the extent of funds legally available therefor. Any remaining funds shall be distributed pursuant to s. 608.444.

(11) A member of a dissolved limited liability company, the assets of which were distributed pursuant to subsection (9) or subsection (10) is not liable for any claim against the limited liability company in an amount in excess of such member's pro rata share of the claim or the amount distributed to the member, whichever is less.

(12) A member of a dissolved limited liability company, the assets of which were distributed pursuant to subsection (9) is not liable for any claim against the limited liability company on which a proceeding is not begun prior to the expiration of 3 years following the effective date of dissolution.

(13) The aggregate liability of any member of a dissolved limited liability company for claims against the dissolved limited liability company may not exceed the amount distributed to the member in dissolution.

**Credits**
Added by Laws 1993, c. 93-284, § 41, eff. Oct. 1, 1993. Amended by Laws 1997, c. 97-102, § 60, eff. July 1, 1997; Laws 1999, c. 99-315, § 1, eff. Oct. 1, 1999.

**Editors' Notes**

<div align="center">

**REPEAL**

<Laws 2013, c. 2013-180, § 5, repeals this section effective January 1, 2015. >

</div>

West's F. S. A. § 608.4421, FL ST § 608.4421
Current through Ch. 272 (End) of the 2013 1st Reg. Sess. of the 23rd Legislature

End of Document                                    © 2013 Thomson Reuters. No claim to original U.S. Government Works

FILED
Oct 29, 2013
Secretary of State

# ARTICLES OF DISSOLUTION

Pursuant to section 608.445, Florida Statutes, this Florida limited liability company submits the following Articles of Dissolution:

FIRST:  The name of the limited liability company as currently filed with the Florida Department of State:

NERDAPALOOZA, LLC

SECOND:  The document number of the limited liability company: L1000000 44931

THIRD:  The file date of the articles of organization: January 14, 2010

FOURTH:  The date the dissolution was approved: October 29, 2013

FIFTH:  A description of occurance that resulted in the limited liability company's dissolution pursuant to section 608.441 , , Florida Statutes:

COMPANY DISSOLVING BECAUSE OF BANKRUPTCY

SIXTH:  Adequate provision has been made for the debts, obligations and liabilities pursuant to s. 608.4421.

SEVENTH:  All remaining property and assets have been distributed among its members in accordance with their respective rights and interests.

EIGHTH:  There are no suits pending against the company in any court.

I/we submit this document and affirm that the facts stated herein are true. I/we am/are aware that any false information submitted in a document to the Department of State constitutes a third degree felony as provided for in section 817.155, Florida Statutes.

Signature:  **JOHN T CARTER**

Electronic Signature of Member having the same percentage of membership interest necessary to approve the dissolution

Signature:  **BRYAN KISSEL**

Electronic Signature of Member having the same percentage of membership interest necessary to approve the dissolution

Signature:  **JOSH THEW**

Electronic Signature of Member having the same percentage of membership interest necessary to approve the dissolution

EXHIBIT "G"

# WEBB, WELLS & WILLIAMS, P.A.

### ATTORNEYS AT LAW

260 WEKIVA SPRINGS ROAD, SUITE 1070
LONGWOOD, FLORIDA 32779

PHONE (407) 865-5600                                                                 FAX (407) 865-6495

January 16, 2014

## VIA CERTIFIED MAIL, US MAIL DELIVERY, AND
## ELECTRONIC MAIL DELIVERY

John T. Carter                                                  John T. Carter
652 Gilbert Road                                                711 Sherwood Terrace Drive, Apt. 302
Winter Park, FL  32792                                          Orlando, FL 32818
hex@nerdapalooza.org                                            hex@nerdapalooza.org
johnhexcarter@nerdapalooza.org                                  johnhexcarter@nerdapalooza.org

Bryan Kissel                                                    nerdapaloozabooking@gmail.com
4652 Misty Ridge Drive
Fort Worth, TX 76137
bryan@nerdapalooza.org

Joshua B. Thew
2708 Winter Park Road
Winter Park, FL  32789
josh@nerdapalooza.org

Re:    Copies of Demand Letters - They Might Be, Inc. to Nerdapalooza, LLC
       (Demand for Payment) (Bad Check)

Gentlemen,

I am sending each of you a copy of this letter, along with the two (2) demand letters that were sent by certified mail to Nerdapalooza, LLC at 7512 Key Colony Ave., Apt. 2811, Winter Park, FL  32792-6952. The letters were returned as undelivered. I am also enclosing copies for the envelopes for your reference.

Since the offices of Nerdapalooza, LLC appear to be closed, and we have found no appropriate proceeding to dissolve the company or bankruptcy filing, I am addressing these demands to each of you. They Might Be, Inc. demands payment of the amounts due to it. Likewise, as you can see from the attached letters, They Might Be, Inc. has good cause to believe that (a) you as the Nerdapalooza, LLC members may be personally liable; and, (b) that this liability could include damages of three times the amount of the bad check that was tendered to They Might Be, Inc.

# EXHIBIT "H"

If you have legal counsel please forward these documents to that person and I will be glad to communicate solely with your counsel. They Might Be, Inc. is willing to discuss an amicable resolution of its claims.   However, if we do not hear from you or your legal counsel as soon as possible, then I may be required to file suit against each of you.

Therefore, I am again giving each of you this additional notice:

Pursuant to Section 68.085 of the Florida Statutes:

You are hereby notified that a check numbered 1169 in the face amount of $37,500 issued by JPMorgan Chase Bank, N.A. on October 19, 2013 made payable to They Might Be Inc. has been dishonored. Pursuant to Florida law, you, as the remaining members of Nerdapalooza LLC, have 30 days from receipt of this notice to tender payment in cash of the full amount of the check plus a service charge of $25, if the face value does not exceed $50, $30, if the face value exceeds $50 but does not exceed $300, $40, if the face value exceeds $300, or 5 percent of the face amount of the check, whichever is greater, the total amount due being $1,875. Unless this amount is paid in full within the 30-day period, The Might Be Inc, the holder of the check or instrument, may file a civil action against Nerdapalooza LLC and you for three times the amount of the check, but in no case less than $50, in addition to the payment of the check plus any court costs, reasonable attorney fees, and any bank fees incurred by the payee in taking the action.

Section 68.065 of the Florida Statutes states:

... (1) In any civil action brought for the purpose of collecting a check, draft, or order of payment, the payment of which was refused by the drawee because of the lack of funds, credit, or an account, or where the maker or drawer stops payment on the check, draft, or order of payment with intent to defraud, and where the maker or drawer fails to pay the amount owing, in cash, to the payee within 30 days following a written demand therefore, as provided in subsection (3), the maker or drawer shall be liable to the payee, in addition to the amount owing upon such check, draft, or order, for damages of triple the amount so owing. However, in no case shall the liability for damages be less than $50. The maker or drawer shall also be liable for any court costs and reasonable attorney fees incurred by the payee in taking the action. Criminal sanctions, as provided in 832.07, may be applicable. (2) The payee may also charge the maker or drawer of the check, draft, or order of payment a service charge not to exceed the service fees authorized under s. 832.08(5) or 5 percent of the face amount of the instrument, whichever is greater, when making written demand for payment. In the event that a judgment or decree is rendered, interest at the rate and in the manner described in s. 55.03 may be added toward the total amount due. Any bank fees incurred by the payee may be charged to the maker or drawer of the check, draft, or order of payment. ...

Unless you or Nerdapalooza, LLC pay the check within thirty (30) days then They Might Be Inc. will be entitled to a judgment in the amount of the check ($37,500) ($1,875 the service charge of 5 percent of the check) plus three times the amount of the check ($112,500) for a total judgment of $151,875, plus interest at the statutory rate, bank fees, costs of filing suit, and attorneys fees. For further reference of how the Florida courts interpret this type of claim Nerdapoolaza LLC or its counsel may wish to review the case of *NASR Intern. Trading, Co., Inc. v. Rahul International Inc.*, 675 So.2d 704 (Fla. 3d DCA 1996).

I look forward to hearing from your counsel or you. If, however, They Might Be, Inc. or I do not receive payment of a response from you within thirty (30) days then I will recommend to They Might Be, Inc. to file suit against all of you.

Respectfully,

Dennis Wells

DFW/hw
enclosure

# DEMAND LETTER

# WEBB, WELLS & WILLIAMS, P.A.

ATTORNEYS AT LAW

260 WEKIVA SPRINGS ROAD, SUITE 1070
LONGWOOD, FLORIDA 32779

PHONE (407) 865-5600

FAX (407) 865-8495

December 5, 2013

Nerdapalooza LLC
Attention: John T. Carter, Bryan Kissel and Josh Thew
7512 Key Colony Ave.
Apt. 2811
Winter Park, FL  32792-6952

*Via U.S. Mail and Certified Mail*

Subject:  They Might Be Inc. – Demand For Payment

I represent They Might Be Inc. and this letter is to demand payment of the $37,500 that is owed by Nerdapalooza LLC.

Enclosed is a copy of the contract between Nerdapalooza LLC and They Might Be Inc. You will note that the contract was reaffirmed or resigned by Joshua Thew. In addition, I am enclosing a copy of the letter or note that was also signed by Joshua Thew where, by signing, he acknowledges that it states in part; "…the parties involved will sign with the intent to make good on the contractual payment …"

A dishonored check in the amount of $37,500 was delivered by Nerdapalooza LLC. No further attempt to pay the amount due has been made. In another letter I have submitted They Might Be Inc.'s demand for payment of the dishonored check.

**Nerdapalooza LLC, and we believe its members, individually, still owe They Might Be, Inc. the $37,500 that Nerdapalooza LLC contractually agreed to pay.**

We have become aware that Nerdapalooza LLC has now filed Articles of Dissolution with the Florida Secretary of State's office. The Articles of Dissolution were electronically signed by John T. Carter, Bryan Kissel and Josh Thew. By their signatures John T. Carter, Bryan Kissel and Josh Thew state that, pursuant to Section 817.155 of the Florida Statutes, each of them have certified that the eight statements above were truthful. A copy of the Articles of Dissolution are also enclosed with this letter. Each of these members has subjected himself to potential criminal liability under Section 817.155, and for your reference I am enclosing a copy of that statute.

Likewise, it appears that the members, John T. Carter, Bryan Kissel and Josh Thew, may have violated Section 817.155, when in the sixth statement they assert that "...Adequate provision has been made for the debts, obligations and liabilities pursuant to s. 608.4421. We believe that this is a false statement. I am enclosing a copy of section 608.4421 for your reference and you should be able to see that Nerdapalooza LLC has not complied with section 608.4421 regarding the amounts owed to They Might Be Inc. Specifically, I direct your attention to section 608.4421 (2) – (7), which we believe have not been met. Likewise, Nerdapalooza LLC has not complied with subsection (9) of section 608.4421. Therefore, we believe that Nerdapalooza and its members, John T. Carter, Bryan Kissel and Josh Thew, are subject to the liabilities imposed under Section 608.4421 (10) – (13).

In addition, it appears that the statement in the Articles of Dissolution at "fifth" that the "Company Dissolving Because of Bankruptcy" is also false, because we cannot locate any bankruptcy filing for Nerdapalooza LLC, and no such notice of bankruptcy has been sent to They Might Be Inc.

So, in summary, Nerdapalooza LLC and its members, John T. Carter, Bryan Kissel and Josh Thew are hereby given notice that the $37,500 owed to They Might Be Inc. should be paid immediately. If Nerdapalooza LLC does not make this payment or properly comply with Section 608.4421 to provide for payment to They Might Be Inc. then They Might Be Inc. may likely proceed with all appropriate litigation. If Nerdapalooza LLC does not comply with Section 608.4421 then it and its members, John T. Carter, Bryan Kissel and Josh Thew, may be subject to criminal sanctions under Section 817.155.

I look forward to hearing from Nerdapalooza LLC or its counsel.


Respectfully

*Dennis Wells*

Dennis Wells


DFW/hw
cc. They Might Be Inc.

# high road touring

Phone: (415) 332-9292
Fax: (415) 332-4692

Contract 12361

Agreement made this date, April 22, 2013 by and between They Might Be Inc. f/s/o They Might Be Giants (hereinafter referred to as Artist) and Hurdapalooza LLC (hereinafter referred to as Purchaser). It is understood and mutually agreed that the Purchaser engages the Artist to perform the following engagement upon all the terms and conditions hereunder set forth:

**ARTIST:** They Might Be Giants          100% Headline

**VENUE:** Orange County Convention Center  Convention Center   9900 International Dr., Orlando, FL 32819, USA

**PRODUCTION:** Ismael Tamberlla 916.214.2842 msptbmg@gmail.com

**SHOWDATES:**  Sat. Oct 19, 2013

**TICKETS:**

| Description | Quantity | Comps | Kills | Price | Deductions | GP | Adjusted GP |
|---|---|---|---|---|---|---|---|
| TBA | 6,000 | 0 | 0 | 0.00 | 0 | 0.00 | 0.00 |
|  | 6,000 | 0 | 0 |  |  | 0.00 | 0.00 |
| Total Shows: 1 | 6,000 | 0 | 0 |  | Gross Potential: | | 0.00 |
| Facilities Ticket Surcharge (-) |  |  |  |  | Adjusted Gross Potential: | | 0.00 |
| Ticket price is still TBD |  |  |  |  | Tax (%): Tax Total: | | 0.00 |
|  |  |  |  |  | Net Potential: | | 0.00 |

**TERMS:** 50,000.00 US Dollar (US$) guarantee paid to Artist.

**ADDITIONAL PROVISIONS:**

Purchaser agrees to provide in house (sound and lights).

Purchaser shall provide any and all rider requirements as per Artist's specifications and approval, at no cost to Artist. Unless Agreed to in advance by Artist's Agent, all shows are to be age restricted to 14 plus (NO" AL. AGES).

Contract Due to High Road Touring by 4/30/2013

**EVENT SPECIFICS:**

SATURDAY, OCTOBER 19, 2013 12 NOON BAND

Doors Open: N/A          Stage Time: 12 noon       Change Time: 10:30 am     Curfew:       Age Limit: all ages
Note: TMBG stopped to play directly preceding them

**MERCHANDISING RATES:**

Building Sell Merchandise %:         Artist Sell Merchandise %: 100
Building Sell Recorded Product %:    Artist Sell Recorded Product %: 100
Notes:

**OTHER ARTIST(S) PAID BY PROMOTER:**

$      tbd    75% Special Guest    200 25 Dollar (US$)

**PAYMENTS:**

12500 US Dollar (US$) Deposit to this Agency by certified check or bank wire only due by: 4/30/2013

SECOND DEPOSIT OF $12,500 DUE MONDAY AUGUST 19

Balance of payment with any applicable overages in cash or company check is due on the night of show made payable to Artist's touring entity.

High Road Touring Bank Wire Information, Bank of Marin, ABA# 121141877 ACCOUNT#42 988913

No performance on this engagement shall be recorded, reproduced, or transmitted from the place of performance, in any manner or by any means whatsoever, in the absence of a specific written agreement with the Artist.

It is understood by the Purchaser and the Artist who are parties to this contract that neither High Road Touring nor its employees nor directors are parties to this contract in any capacity other than as Agent and, therefore, that neither High Road Touring nor are employees nor directors shall be liable for the performance or breach of any provision hereof. This contract shall not be binding unless signed by all parties hereto, should any Additional Provisions, Rider, Addendum, and/or Expense sheet be attached to this Agreement by they shall also constitute a part if this agreement and shall be signed by all parties to this contract.

This agreement of the Artist to perform is subject to proven detention by sickness, accidents, riots, strikes, epidemics, acts of God, or any other legitimate conditions beyond their control. IN WITNESS WHEREOF, the parties have executed this agreement on the date first above written.

They Might Be Inc. f/s/o They Might Be Giants        Hurdapalooza LLC
22-2950228                                              Signature: John T. Carter    Fed ID#: 65-016-7165

X _____                                  X _____
c/o High Road Touring:                                 7517 May Delacy Ave. # 2011, Winter Park, FL 32792, USA
Booking Agent: Dave Bowan   (415) 332-9292  Fax:(415) 332-4692

c/o Joshua Shaw

X _____

10.19.13

Frank, Pete

Guys, i have the remainder of the balance ($37,500.00) in check form. They. Joshua Thew (Nerdapalooza) are telling me they don't have all this in the bank- Shy about $1500( i am being told). I wan't to go on record saying that "this is an issue and that they are asking for us to drop the fee to help accommodate their loss." I have explained to them that i can not authorize this. This matter is between High Road and Hornblow and They Might Be Giants. Being that this is a signed contractual agreement this matter will have to be resolved. I have the check and the parties involved will sign this with the intent to make good on the contractual payment- See signed invoice attached which both parties will resign and date tonight.

The show was performed at the Orange County Convention Center address: 9800 International Dr. Orlando FL 32819. Todays show date was 10-19-13. It is now. 10-20-13 1:48am.

Scott Bozack

Joshua Thew

10- 19/20-13



Oct 29, 2013
**Secretary of State**

# ARTICLES OF DISSOLUTION

Pursuant to section 608.445, Florida Statutes, this Florida limited liability company submits the following Articles of Dissolution:

FIRST:    The name of the limited liability company as currently filed with the Florida Department of State:

NERDAPALOOZA, LLC

SECOND:    The document number of the limited liability company: L10000004931

THIRD:    The file date of the articles of organization: January 14, 2010

FOURTH:    The date the dissolution was approved: October 29, 2013

FIFTH:    A description of occurance that resulted in the limited liability company's dissolution pursuant to section 608.441, Florida Statutes:

COMPANY DISSOLVING BECAUSE OF BANKRUPTCY

SIXTH:    Adequate provision has been made for the debts, obligations and liabilities pursuant to s. 608.4421.

SEVENTH:    All remaining property and assets have been distributed among its members in accordance with their respective rights and interests.

EIGHTH:    There are no suits pending against the company in any court.

I/we submit this document and affirm that the facts stated herein are true. I/we am/are aware that any false information submitted in a document to the Department of State constitutes a third degree felony as provided for in section 817.155, Florida Statutes.

Signature:    JOHN T CARTER

Electronic Signature of Member having the same percentage of membership interest necessary to approve the dissolution

Signature:    BRYAN KISSEL

Electronic Signature of Member having the same percentage of membership interest necessary to approve the dissolution

Signature:    JOSH THEW

Electronic Signature of Member having the same percentage of membership interest necessary to approve the dissolution

608.4421. Claims against dissolved limited liability company, FL ST § 608.4421

West's Florida Statutes Annotated
  Title XXXVI. Business Organizations (Chapters 605-623)
    Chapter 608. Limited Liability Companies (Refs & Annos)

West's F.S.A. § 608.4421

608.4421. Claims against dissolved limited liability company

Currentness

(1) A dissolved limited liability company may dispose of the known claims against it by following the procedures described in subsections (2), (3), and (4).

(2) The dissolved limited liability company shall deliver to each of its known claimants written notice of the dissolution at any time after its effective date. The written notice shall:

(a) Provide a reasonable description of the claim that the claimant may be entitled to assert.

(b) State whether the claim is admitted or not admitted, in whole or in part, and, if admitted:

1. The amount that is admitted, which may be as of a given date.

2. Any interest obligation if fixed by an instrument of indebtedness.

(c) Provide a mailing address where a claim may be sent.

(d) State the deadline, which may not be fewer than 120 days after the effective date of the written notice, by which confirmation of the claim must be delivered to the dissolved limited liability company.

(e) State that the limited liability company may make distributions thereafter to other claimants and its members or former members without further notice.

(3) A dissolved limited liability company may reject, in whole or in part, any claim made by a claimant pursuant to this subsection by mailing written notice of such rejection to the claimant within 90 days after receipt of such claim and, in all events, at least 150 days before expiration of 3 years following the effective date of dissolution. A notice sent by the limited liability company pursuant to this subsection shall be accompanied by a copy of this section.

(4) A dissolved limited liability company electing to follow the procedures described in subsections (2) and (3) shall also give notice of the dissolution of the limited liability company to persons with claims contingent upon the occurrence or nonoccurrence of future events or otherwise conditional or unmatured, and request that such persons present such claims in accordance with the terms of such notice. Such notice shall be in substantially the form, and sent in the same manner, as described in subsection (2).

Next

608.4421. Claims against dissolved limited liability company, FL ST § 608.4421

(5) A dissolved limited liability company shall offer any claimant whose claim is contingent, conditional, or unmatured such security as the limited liability company determines is sufficient to provide compensation to the claimant if the claim matures. The dissolved limited liability company shall deliver such offer to the claimant within 90 days after receipt of such claim and, in all events, at least 150 days before expiration of 3 years following the effective date of dissolution. If the claimant offered such security does not deliver in writing to the dissolved limited liability company a notice rejecting the offer within 120 days after receipt of such offer for security, the claimant is deemed to have accepted such security as the sole source from which to satisfy the claimant's claim against the limited liability company.

(6) A dissolved limited liability company which has given notice in accordance with subsections (2) and (4) shall petition the circuit court in the county where the limited liability company's principal office is located or was located at the effective date of dissolution to determine the amount and form of security that will be sufficient to provide compensation to any claimant who has rejected the offer for security made pursuant to subsection (5).

(7) A dissolved limited liability company which has given notice in accordance with subsection (2) shall petition the circuit court in the county where the limited liability company's principal office is located or was located at the effective date of dissolution to determine the amount and form of security which will be sufficient to provide compensation to claimants whose claims are known to the limited liability company but whose identities are unknown. The court shall appoint a guardian ad litem to represent all claimants whose identities are unknown in any proceeding brought under this subsection. The reasonable fees and expenses of such guardian, including all reasonable expert witness fees, shall be paid by the petitioner in such proceeding.

(8) The giving of any notice or making of any offer pursuant to the provisions of this section shall not revive any claim then barred or constitute acknowledgment by the dissolved limited liability company that any person to whom such notice is sent is a proper claimant and shall not operate as a waiver of any defense or counterclaim in respect of any claim asserted by any person to whom such notice is sent.

(9) A dissolved limited liability company which has followed the procedures described in subsections (2)-(7):

(a) Shall pay the claims admitted or made and not rejected in accordance with subsection (3).

(b) Shall post the security offered and not rejected pursuant to subsection (5).

(c) Shall post any security ordered by the circuit court in any proceeding under subsections (6) and (7).

(d) Shall pay or make provision for all other obligations of the limited liability company.

Such claims or obligations shall be paid in full, and any such provision for payments shall be made in full if there are sufficient funds. If there are insufficient funds, such claims and obligations shall be paid or provided for according to their priority and, among claims of equal priority, ratably to the extent of funds legally available therefor. Any remaining funds shall be distributed pursuant to s. 608.444; however, such distribution may not be made before the expiration of 150 days from the date of the last notice of rejections given pursuant to subsection (3).

(10) A dissolved limited liability company which has not followed the procedures described in subsections (2) and (3) shall pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional, or unmatured claims known to the limited liability company and all claims which are known to the dissolved limited liability company but

Next

608.4421. Claims against dissolved limited liability company, FL ST § 608.4421

for which the identity of the claimant is unknown. Such claims shall be paid in full, and any such provision for payment made shall be made in full if there are sufficient funds. If there are insufficient funds, such claims and obligations shall be paid or provided for according to their priority and, among claims of equal priority, ratably to the extent of funds legally available therefor. Any remaining funds shall be distributed pursuant to s. 608.444.

(11) A member of a dissolved limited liability company, the assets of which were distributed pursuant to subsection (9) or subsection (10) is not liable for any claim against the limited liability company in an amount in excess of such member's pro rata share of the claim or the amount distributed to the member, whichever is less.

(12) A member of a dissolved limited liability company, the assets of which were distributed pursuant to subsection (9) is not liable for any claim against the limited liability company on which a proceeding is not begun prior to the expiration of 3 years following the effective date of dissolution.

(13) The aggregate liability of any member of a dissolved limited liability company for claims against the dissolved limited liability company may not exceed the amount distributed to the member in dissolution.

Credits
Added by Laws 1993, c. 93-284, § 41, eff. Oct. 1, 1993. Amended by Laws 1997, c. 97-102, § 60, eff. July 1, 1997; Laws 1999, c. 99-315, § 1, eff. Oct. 1, 1999.

Editors' Notes

### REPEAL

<Laws 2013, c. 2013-180, § 5, repeals this section effective January 1, 2015. >

West's F. S. A. § 608.4421, FL ST § 608.4421
Current through Ch. 272 (End) of the 2013 1st Reg. Sess. of the 23rd Legislature

End of Document                                               © 2013 Thomson Reuters. No claim to original U.S. Government Works.

Next

# BAD CHECK
# LETTER

# WEBB, WELLS & WILLIAMS, P.A.

### ATTORNEYS AT LAW

260 WEKIVA SPRINGS ROAD, SUITE 1070
LONGWOOD, FLORIDA 32779

PHONE (407) 865-5600

FAX (407) 865-6495

December 5, 2013

Nerdapalooza LLC
7512 Key Colony Ave.
Apt. 2811
Winter Park, FL 32792-6952

*Via U.S. Mail and Certified Mail*

Subject: They Might Be Inc. – Demand For Payment

I represent They Might Be Inc. and this letter is to demand payment of the amount that was originally tendered by Nerdapalooza LLC in a check number 1169, dated October 19, 2013, drawn on JPMorgan Chase Bank, N.A., for the amount of $37,500. This demand is made because when They Might Be Inc. deposited the check it was returned for "insufficient funds".

Pursuant to Section 68.085 of the Florida Statutes:

Nerdapalooza LLC is hereby notified that a check numbered 1169 in the face amount of $37,500 issued by JPMorgan Chase Bank, N.A. on October 19, 2013 made payable to They Might Be Inc. has been dishonored. Pursuant to Florida law, Nerdapalooza LLC has 30 days from receipt of this notice to tender payment in cash of the full amount of the check plus a service charge of $25, if the face value does not exceed $50, $30, if the face value exceeds $50 but does not exceed $300, $40, if the face value exceeds $300, or 5 percent of the face amount of the check, whichever is greater, the total amount due being $1,875. Unless this amount is paid in full within the 30-day period, The Might Be Inc., the holder of the check or instrument, may file a civil action against Nerdapalooza LLC for three times the amount of the check, but in no case less than $50, in addition to the payment of the check plus any court costs, reasonable attorney fees, and any bank fees incurred by the payee in taking the action."

Section 68.065 of the Florida Statutes states:

... (1) In any civil action brought for the purpose of collecting a check, draft, or order of payment, the payment of which was refused by the drawee because of the lack of funds, credit, or an account, or where the maker or drawer stops payment on the check, draft, or order of payment with intent to defraud, and where the maker or drawer fails to pay the amount owing, in cash, to the payee within 30

days following a written demand therefore, as provided in subsection (3), the maker or drawer shall be liable to the payee, in addition to the amount owing upon such check, draft, or order, for damages of triple the amount so owing. However, in no case shall the liability for damages be less than $50. The maker or drawer shall also be liable for any court costs and reasonable attorney fees incurred by the payee in taking the action. Criminal sanctions, as provided in 832.07, may be applicable. (2) The payee may also charge the maker or drawer of the check, draft, or order of payment a service charge not to exceed the service fees authorized under s. 832.08(5) or 5 percent of the face amount of the instrument, whichever is greater, when making written demand for payment. In the event that a judgment or decree is rendered, interest at the rate and in the manner described in s. 55.03 may be added toward the total amount due. Any bank fees incurred by the payee may be charged to the maker or drawer of the check, draft, or order of payment. ...

Unless Nerdapalooza LLC pays the check within 30 days then They Might Be Inc. will be entitled to a judgment in the amount of the check ($37,500) ($1,875 the service charge of 5 percent of the check) plus three times the amount of the check ($112,500) for a total judgment of $151,875, plus interest at the statutory rate, bank fees, costs of filing suit, and attorneys fees. For further reference of how the Florida courts interpret this type of claim, Nerdapoolaza LLC or its counsel may wish to review the case of *NASR Intern. Trading, Co., Inc. v. Rahul International Inc.*, 675 So.2d 704 (Fla. 3d DCA 1996).

In addition, you should be aware that the officers of Nerdapalooza LLC who knowingly authorized the signing and tender of a worthless check run the risk of being subject to criminal penalties. Section 832.041 of the Florida Statutes states:

...Whoever, with intent to defraud any person shall, in person or by agent, make, draw, utter, deliver, or give any check, draft, or written order for the payment of money upon any bank, person, or corporation and secure from such person goods or services for or on account of such check, draft, or written order, whether such goods or services are valued at the amount of such check, draft, or written order or at a greater or lesser value, and who shall, pursuant to and in furtherance of such intent to defraud, stop payment on such check , draft, or written order, shall be deemed to be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if the value of the goods or services secured for or on account of such check, draft, or written order is $150 or more; and if the value of the goods or services secured for or on account of such check, draft, or written order is less than $150, he or she shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or 775.083. ...

In summary, The Might Be Inc. demands that Nerdapalooza LLC pay $37,500 plus the service charge of $1,875 within thirty (30) days, plus attorneys fees. We estimate those to be $225.00 at this time. If Nerdapalooza LLC does not pay the full amount of $39,600 within thirty (30) days then Nerdapalooza LLC and those who knowingly authorized the preparation and

tender of the dishonored check may be subjected to a lawsuit for damages in excess of $151,875, plus interest, costs and attorneys fees.

I look forward to hearing from Nerdapalooza LLC or its counsel.

Respectfully

*Dennis Wells*

Dennis Wells

DFW/hw
cc. They Might Be Inc.

10- 19 /20 -13



# BAD CHECK

10- 19/20-13



# RETURNED CERTIFIED LETTERS

WEBB, WELLS & WILLIAMS, P.A.
ATTORNEYS AT LAW
260 WEKIVA SPRINGS ROAD, SUITE 1070
LONGWOOD, FLORIDA 32779

CERTIFIED MAIL

7013 2250 0001 2098 7014

RETURN RECEIPT

A/D 12/11

Nerdapalooza, LLC
7512 Key Colony Avenue
Apt. 2811
Winter Park

NIXIE 339 DE 1 0001/01/14

RETURN TO SENDER
VACANT
UNABLE TO FORWARD

BC: 32779630870 *1301-12392-06-39

06.31 MAILED FROM ZIP CODE 32779

AD 1/6/14

1/15/14
1/21/14

WEBB, WELLS & WILLIAMS, P.A.
ATTORNEYS AT LAW
260 WEKIVA SPRINGS ROAD, SUITE 1070
LONGWOOD, FLORIDA 32779

CERTIFIED MAIL

7013 2250 0001 2098 7021

RETURN RECEIPT

A/D 12/11

Nerdapalooza, LLC
7512 Key Colony Avenue
Apt. 2811
Winter Par

NIXIE 339 DE 1 0001/01/14

RETURN TO SENDER
VACANT
UNABLE TO FORWARD

BC: 32779630870 *1301-12397-06-39

06.31 MAILED FROM ZIP CODE 32779

1/10/14
1/21/14

AD 1/6/14

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

**FILED**

**FEB -6 2015**

**CLERK U.S. BANKRUPTCY,**
**ORLANDO DIVISION**

| PLAINTIFFS<br><br>THEY MIGHT BE, INC. | DEFENDANTS<br><br>JOHN T. CARTER |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Alex Finch, Esquire; Webb, Finch & Wells, P.A.<br>280 Wekiva Springs Rd, Suite 2090, Longwood, FL 32779<br>(407)865-5600 | ATTORNEYS (If Known)<br>Jeanne A. Kraft, Esquire; Wolff, Hill, McFarlin & Herron, P.A.<br>1851 West Colonial Drive, Orlando, FL 32804<br>(407)648-0058 |
| PARTY (Check One Box Only)<br>□ Debtor   □ U.S. Trustee/Bankruptcy Admin<br>■ Creditor   □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>■ Debtor   □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor   □ Other<br>□ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
The cause of action is for damages in excess of $125,000 base on fraud in the inducement, false pretenses and,
issuance of a worthless negotiable instrument.

| NATURE OF SUIT |
|---|
| (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☑ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☑ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
   actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
   **(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
   (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court
   if unrelated to bankruptcy case)

| ■ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ■ Check if a jury trial is demanded in complaint | Demand $   in excess of $125,000 |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>JOHN T. CARTER | BANKRUPTCY CASE NO.<br>6:14-bk-07895 | |
| DISTRICT IN WHICH CASE IS PENDING<br>FLORIDA MIDDLE DISTRICT | DIVISION OFFICE<br>ORLANDO | NAME OF JUDGE<br>CYNTHIA C. JACKSON |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*Alex Finch* | | |
| DATE<br><br>FEBRUARY 5th, 2015 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>ALEX FINCH, ESQ. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.